**STATE of Missouri, Respondent,**

v.

**Thomas E. LEE, Appellant.**

**Nos. 63074, 60755.**

Supreme Court of Missouri,
En Banc.

Jan. 12, 1982.

Louis J. Nolan, Springfield, for appellant.

John Ashcroft, Atty. Gen., Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

DONNELLY, Chief Justice.

Appellant was convicted of robbery in the first degree, § 560.120, RSMo 1969, and was sentenced by the court under the Habitual Criminal Act, § 556.280, RSMo 1969, to a 20-year prison term. After an appeal to the Missouri Court of Appeals, Southern District, 576 S.W.2d 341, we ordered the case transferred to this Court.

We affirm and adopt, in this opinion, some portions of the opinion filed in the Court of Appeals without using quotation marks.

Appellant was identified by the robbery victim, Mr. Sylvanous Martin, as one of two men who came to his home to look at an automobile Mr. Martin had for sale. Mr. Martin left with the men when they asked to test drive the car. The appellant's companion, who identified himself as "Steve," drove; Mr. Martin sat next to him in the front seat, and the appellant, who identified himself as "Jerry," sat in back. When the two men suggested taking the car out on the highway, Mr. Martin balked, but consented when "Steve" announced that he and "Jerry" were escaped convicts from Oklahoma and that "Jerry" had a gun at Mr. Martin's head. During the ride, "Jerry" told Mr. Martin that he had a child that he had not seen for two years.

Mr. Martin was eventually released eight or nine miles away and called the police. Following appellant's arrest, Mr. Martin identified appellant as the robber named "Jerry" from photographs shown to him by police and at a pretrial hearing.

Appellant first complains of the admission of evidence of a separate and distinct crime, i.e., his escape from an Oklahoma penitentiary. This evidence consisted of Mr. Martin's testimony that appellant's accomplice, "Steve," told him in the car that he and "Jerry" were escaped convicts from Oklahoma, testimony of an Oklahoma State Penitentiary records custodian, and records relative to appellant's incarceration in Oklahoma.

■ The evidence appellant was an escapee from an Oklahoma prison was relevant to establish appellant's identity, motive, intent, and to show a common scheme or plan, all of which are recognized exceptions to the general rule prohibiting evidence of other, unrelated crimes. *State v. Mitchell*, 491 S.W.2d 292, 295 (Mo. banc 1973).

■ The statement by appellant's accomplice that he and appellant were escaped convicts from Oklahoma, made during the course of the robbery, was admissible as part of res gestae. *State v. Talbert*, 454 S.W.2d 1, 3 (Mo.1970). It was also admissible as a declaration of a co-conspirator. *State v. Peters*, 123 S.W.2d 34, 38 (Mo.1938).

■ The Oklahoma prison records confirmed appellant was a recent escapee from that institution at the time of the robbery and, as appellant told Mr. Martin, had a two-year-old son. The statement and records were relevant to establish appellant's identity, to demonstrate appellant's motive for committing the robbery, to show a common scheme or plan of escaping the authorities, and to instill fear in the victim. *State v. Mitchell, supra; State v. Booker*, 517 S.W.2d 937, 942 (Mo.App.1974).

■ Appellant next contends the trial court erred in refusing to suppress the identification testimony of Mr. Martin. He ar-

gues that the pre-trial photographic procedures used by the State were "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." He contends that none of the photographs revealed the height of the individual photographed or would permit a person to draw any inferences as to the weight of the individual pictures; that four of the five photographs shown Mr. Martin did not contain the hair features attributed to appellant by Mr. Martin; that all of the pictures could be described as "mug shots," since they bore insignia on the front of them indicating that those pictured in the photographs were prisoners; that Mr. Martin did not have a sufficient opportunity to view appellant in the car; that Mr. Martin would not have paid much attention to appellant in the car until he was informed that a gun was at his head; that Mr. Martin's description of appellant given to police differed greatly from appellant's actual characteristics; that Mr. Martin did not have a high level of certainty with respect to the identification of appellant; and that the time between the crime in question and Mr. Martin's viewing of the photographs, some three weeks, was too long for a reliable identification.

We do not find these identification procedures to offend constitutional boundaries. The procedures followed by the police were thoroughly explored in appellant's pretrial motion to suppress his identification and at trial. There was no evidence to support appellant's contention that the procedures ran afoul of Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), by being "impermissibly suggestive." Furthermore, the record justifies the conclusion that the victim had an independent basis for appellant's identification at trial. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); State v. Madison, 537 S.W.2d 563 (Mo.App.1976). The victim, Mr. Martin, was in the company of appellant for about an hour. The crime was committed in daylight. Mr. Martin was close to appellant and had a clear view of appellant's face. Mr. Martin made an unhesitant and positive

identification of appellant at the pretrial confrontation which occurred less than three weeks after the crime.

■ The appellant assails the trial court's failure to declare a mistrial when a police officer testified that Mr. Martin identified appellant from a group of photographs shown him before trial. For this contention, appellant relies on State v. Degraffenreid, 477 S.W.2d 57 (Mo. banc 1972), wherein it was held that the testimony of a police officer that the State's sole eyewitness, a 75-year-old man who had observed the defendant from a distance of 75 to 80 feet, had identified the defendant by means of a photograph, was inadmissible and constituted reversible error. The majority in Degraffenreid stated:

> "It is difficult for this court to conclude with any reasonable assurance of being correct that the testimony of officer Smith corroborating the identifying witness as to the two extrajudicial identifications did not, in the minds of the jurors, confirm the believability of [the witness's] testimony and thereby tip the scales against defendant."

Degraffenreid, supra, at 64.

In the instant case, however, the evidence was cumulative to prior like testimony by Mr. Martin, there was no objection to the officer's testimony and appellant "actively joined in the presentation of this evidence to the jury by [his] cross-examination." State v. Cooksey, 499 S.W.2d 485 (Mo.1978). Where such testimony has not been objected to at trial, this Court has refused to consider it as plain error under what is now Rule 29.11(d). State v. Gant, 490 S.W.2d 46, 49 (Mo.1973); State v. Atkins, 494 S.W.2d 317, 319 (Mo.1973). Likewise, under the circumstances present in this case, we fail to find "manifest injustice" or a "miscarriage of justice." Rule 29.12(b).

■ Lastly, appellant presents several speedy trial arguments. Appellant's claim that he was denied a right to a speedy trial, however, is not supported by the record. "Facts" offered in support of this contention can be gleaned from appellant's unverified motion to dismiss the proceedings but are not buttressed by evidence. The record

shows the information was filed June 10, 1976, and that appellant was tried approximately three months later. Delays between the date of the information and trial were occasioned by appellant's pretrial motions, including motions to disqualify the trial judge and permit his attorney to withdraw. "[I]t is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment." *United States v. Marion*, 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971). *See State v. Odzark*, 532 S.W.2d 45 (Mo.App.1976); *State v. Gardner*, 534 S.W.2d 284 (Mo.App.1976).

█ Appellant also suggests that he was denied a speedy trial under the provisions of the Interstate Agreement on Detainers, § 222.160, RSMo Supp.1975, which provided, in part:

"[W]henever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint . . . ."

Section 222.160, *supra*, art. III, § 1.

The Agreement, however, is not applicable in this case since the State of Oklahoma did not become a "party state" to the Agreement until October 1, 1977. *See* 1977 Okla.Sess.Laws, c. 109, § 5; Okla.Stat.Ann. tit. 22, §§ 1345–1349 (West.Supp.1978). Moreover, the record is devoid of any evidence that appellant attempted to utilize the provisions of the Agreement. *See State v. Bussard*, 494 S.W.2d 401, 404 (Mo.App. 1973).

█ Nor, as appellant argues, is § 545.-890, RSMo 1969, applicable. That section provides, in part:

"If any person indicted for any offense, and committed to prison, shall not be brought to trial before the end of the second term of the court having jurisdiction of the offense which shall be held after such indictment found, he shall be entitled to be discharged . . . ."

Appellant, however, ignores § 545.920, RSMo 1969, which provided, in part:

"In all cities or counties in this state in which there shall be more than two regular terms of court having jurisdiction of criminal cases, the defendant shall not be entitled to be discharged for the reasons and under the circumstances mentioned in section 545.890 until the end of the third term after the indictment was found . . . ."

Section 478.285, RSMo 1969 (repealed by Mo.Laws 1978, p. 696, § A, effective January 2, 1979), provided for three terms of court in Greene County, in January, May, and September. As noted previously, the information in this case was filed June 10, 1976, and appellant was tried in September 1976, circumstances clearly within the mandates of § 545.920.

The judgment is affirmed.

All Concur.