STATE of Missouri, Respondent,

v.

Richard OXFORD, Appellant.

No. 71154.

Supreme Court of Missouri, En Banc.

June 19, 1990.

Rehearing Denied July 31, 1990.

Larry C. Pace, Kansas City, for appellant.

William L. Webster, Atty. Gen., Robert V. Franson, Asst. Atty. Gen., Jefferson City, for respondent.

RENDLEN, Judge.

Finding defendant guilty of first degree murder for killing Melba Wampler, the jury fixed punishment at death; hence the appeal falls within the Court's exclusive jurisdiction. Mo. Const. art. V, § 3. Defendant's motion for postconviction relief filed pursuant to Rule 29.15 was denied by the court after evidentiary hearing. Each judgment is affirmed.

## I. Facts.

The sufficiency of the evidence to support the verdict is not challenged on appeal and our examination of the record reveals abundant testimony as to the ultimate facts. Prior to the murder, defendant was serving consecutive twenty and sixty-five-year sentences in the Conner Correctional Center, Hominy, Oklahoma, from which he and his cellmate, Richard Brown, escaped on November 11, 1986, and on November 14, appeared at the Paint Stallion, a coun-

try western bar in Joplin. Sometime after 9:00 that evening, Harold and Melba Wampler, who were local dairy farmers with seven children, arrived at the bar to socialize with friends. The two escapees spoke to the Wamplers during the evening and about midnight defendant was seen leaving with them; Brown left a few minutes later.

The next day, the Wamplers did not arrive to milk their dairy herd and were missing for many weeks thereafter until finally, on January 2, 1987, the Missouri Highway Patrol received a tip their car was seen at a motel in Kansas City. On investigation, the car was located and the Wamplers' bodies were found wrapped in a blanket in the trunk. An autopsy revealed decomposition of the bodies consistent with their having been dead for six weeks and that both died with massive brain hemorrhages resulting from gunshot wounds to their left temples. The victims' hands and feet were bound, duct tape had been placed over their mouths, and no wallet, purse or money was found with the bodies.

Defendant was arrested in Las Vegas on December 22, 1986, as a fugitive from Oklahoma, and a wristwatch positively identified as belonging to Harold Wampler was found in his possession. A hair found on the blanket wrapping the bodies was indistinguishable from that of defendant, and his fingerprints were found on the car, as well as on groceries inside the car. When defendant was being held in Nevada, he met another inmate, Jeffrey Echols, who testified at trial that defendant admitted to him that he had indeed committed the crime. Defendant asked Echols if he had ever seen anyone shot, and upon receiving a negative response, stated, "It's funny. They go into, like, a convulsion and just a little bit of blood." Defendant also admitted stealing cash, wallets, and Mr. Wampler's watch. While in jail, defendant asked Echols, "How do you be crazy, get crazy? I'm going to try and get crazy and say I'm crazy."

The state called Dr. Robert Holcomb, who testified that defendant suffered from substance abuse and an anti-social personality, but knew and appreciated the nature and wrongfulness of his actions on November 15, 1986, and could conform his action to the requirements of law. On the other hand, defense witness Dr. William Hamilton opined that defendant was not able to fully appreciate the nature of the charges against him or tell the difference between right and wrong. He concluded that defendant was mentally ill.

In the punishment phase, the state offered evidence of defendant's prior convictions on three counts of rape, assault with intent to rape, four counts of forcible sodomy, four counts of burglary in the first degree, and nine other prior convictions.[1] The jury unanimously found these convictions were established, as well as the following aggravating circumstances:

That the murder of Melba Wampler was committed while defendant was engaged in the commission of another unlawful homicide.

That the murder involved torture and depravity of mind and was therefore outrageously or wantonly vile, horrible or inhuman, and,

That at the time of the murder, defendant had escaped from the lawful custody of a place of confinement.

Upon defendant's sentence of death, Judge Darnold questioned him pursuant to Rule 29.07(b), whereupon defendant stated his attorney had done everything he asked him to do, but he was not satisfied with counsel's services because his attorney had the "same boss" as the judge. Judge Darnold found no probable cause to believe defendant received ineffective assistance of counsel.

## II. Direct Appeal.

■ For his first point defendant contends the trial court erred in admitting evidence during the guilt phase that he had

---

**1.** These convictions include assault with a dangerous weapon, robbery with a firearm, robbery by force, possession of a sawed off shotgun, second degree burglary, attempted robbery, attempted larceny of an automobile, knowingly concealing stolen property, and unauthorized use of a motor vehicle.

escaped from prison in Oklahoma prior to the commission of the murder; similarly he asserts error in allowing the prosecutor to refer to the escape during opening statement. The rule regarding the admissibility of evidence of other crimes has been well-stated in *State v. Mallett*, 732 S.W.2d 527, 534 (Mo. banc 1987):

> Evidence of commission by defendant of crimes separate and distinct from the crime for which he is charged is generally inadmissible. But such evidence is generally admissible to prove the crime charged when it tends to establish motive, intent, the absence of mistake or accident, a common scheme or plan embracing the commission of two or more crimes so related that proof of one tends to establish the other, or the identity of the person charged with the commission of the crime on trial. Evidence of other crimes should be admitted under one of these exceptions only when the prejudicial effect of the evidence is outweighed by its probative value. This balancing of prejudicial effect and probative value lies within the sound discretion of the trial court.

(Citations omitted).

We have previously held that evidence of a defendant's escape from prison may be relevant to establish motive, *State v. Lee*, 626 S.W.2d 252, 254 (Mo. banc 1982), *see also State v. Hicks*, 591 S.W.2d 184, 192 (Mo.App.1979), and those holdings are pertinent here. Defendant, who escaped four days prior to the murder, needed money and transportation to further elude recapture, and indeed he and Brown used the victims' automobile to continue their flight. Similarly, in *Mallett* we held that evidence of the defendant's robbery of a jewelry store while on probation was evidence of a motive in the subsequent killing of a state trooper and that he did so in an attempt to avoid the consequences of his prior conduct. 732 S.W.2d at 534–35.

■ Defendant next asserts error arising from the following exchange during voir dire:

> Prosecutor: And *under the right circumstances* could you consider imposing the death penalty?
>
> Ray: Yes.
>
> Prosecutor: *Under the right circumstances*, on the other hand, could you consider imposing life in prison without probation or parole?
>
> Ray: Yes.
>
> \*   \*   \*   \*   \*   \*
>
> Defense counsel: Nannie Ray, you said that you could consider the imposition of the death penalty of Mr. Oxford under—as Mr. Dolph said, *under the right circumstances. What circumstances would be right for voting for death?* (Emphasis added.)

The trial court sustained an objection to the last question, and defendant complains he was not allowed to probe the opinions and bias of the veniremen and was thus denied his right to a fair and impartial jury.

Control of voir dire is within the discretion of the court, which will not be disturbed absent abuse, *State v. Bannister*, 680 S.W.2d 141, 145 (Mo. banc 1984), *cert. denied*, 471 U.S. 1009, 105 S.Ct. 1879, 85 L.Ed.2d 170 and we find no error in the trial court's ruling. The prosecutor's questions were directed to the prospective jurors' ability to follow instructions and impose the appropriate penalty as authorized by law; the questions in no way hinted what would be "the right circumstances" for imposition of these penalties. The question of defense counsel, on the other hand, seemed to search the venireman's opinion as to the law and was accordingly inappropriate. The point is denied.

We also reject as patently meritless defendant's contention that the trial court failed to strike venireman number six for cause. During voir dire the following exchange occurred between defense counsel and this venireman:

> Lozano: So if the State would—the State's certainly going to bring its side up. Would you require them before you could vote innocent—or not guilty, rather—that Mr. Oxford or the defense provide some evidence to you?

Latimer: You mean, would I have to hear it from both sides?

Lozano: Yes.

Latimer: Right.

\* \* \* \* \* \*

Latimer: I thought if you—I'm like her. If he was innocent he wouldn't be here. And I thought they had to prove it to us that he was guilty or we wouldn't be voting if he's innocent.

\* \* \* \* \* \*

Lozano: Do you understand that it's up to the State to prove Mr. Oxford's guilt?

Latimer: Right.

Lozano: And that they have to do that with competent evidence sufficient for you not to have a reasonable doubt?

Latimer: Right. I understand that.

Lozano: Okay. Now, if they don't do that how would you vote?

Latimer: Well, there's just two decisions, give him life or death, and then there's not—

Though the trial court initially refused to strike Betty Latimer, the transcript demonstrates that the court later changed its ruling and Ms. Latimer was in fact stricken for cause. Therefore this claim must be denied.

■ Defendant next charges instructional error, but as he has not set forth the instruction in full in the argument portion of his brief, the point is not preserved for review. Rule 30.06(e); *State v. Harris,* 717 S.W.2d 233, 235 (Mo.App.1986). However, even a cursory glance at the matter *ex gratia* reveals that the claim is meritless. MAI–CR 3d 304.04 sets forth the requisite elements concerning aiding and abetting the commission of a crime. Defendant claims that omission of the following paragraph from that instruction relieved the state of its burden to prove him guilty beyond a reasonable doubt and allowed the jury to find him guilty as long as it found he did not suffer from mental disease or defect:

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions,

you must find the defendant not guilty of that offense.

The MAI specifically provides that this paragraph shall be *omitted* if an affirmative defense is submitted. Mental disease or defect, submitted in the instructions, is an affirmative defense, and the instructions as submitted contained the "reasonable doubt" standard elsewhere, in accordance with the MAI; the instructions specifically stated, before listing the elements of the crimes, that the elements must be found "beyond a reasonable doubt." The omitted paragraph complained of by defendant is a concluding paragraph which simply reiterates the reasonable doubt standard if an affirmative instruction is not submitted; this repetition, gratuitously provided in favor of the criminal defendant, is intended to ensure the jury's compliance with the relevant constitutional standards. Where an affirmative defense is submitted, the reiteration is not employed and contrary to defendant's argument, these instructions are most favorable to the criminal accused. Compliance with MAI in the circumstances here was proper, and we find no error, much less plain error, in the submission of the instructions.

■ Defendant further argues the trial court erred in refusing to submit his proffered instruction cautioning the jury on the credibility of informants. We find no binding precedent requiring the submission of such an instruction altering our established instructional scheme. Though the federal circuit courts may use such an instruction, *see Government of Virgin Islands v. Hendricks,* 476 F.2d 776 (3rd Cir.1973), it is not contained in MAI, which precludes the use of any instruction on the credibility of witnesses other than MAI–CR 3rd 302.01, the general credibility instruction.

■ In his next attack, defendant maintains the trial court erred in admitting the testimony of two rape victims during the penalty phase of trial because they did not identify defendant as the perpetrator of the crimes inflicted upon them. Though these witnesses testified to the circumstances of the crimes and described their attackers, in

their testimony defendant was not specifically named as the perpetrator. However, defendant's convictions for these crimes had previously been admitted as evidence and police officers subsequently testified that property of the rape victims was found in defendant's possession, hence from the evidence in its entirety it was clear defendant was the attacker and no error occurred in the admission of their testimony. Point denied.

■ In his last point raised on direct appeal, defendant asserts there was no evidence to support two of the fifteen aggravating circumstances submitted during the punishment phase by Instruction No. 18. Those two of which defendant complains were that the murder of Melba Wampler was committed "for the purpose of avoiding a lawful custody in a place of lawful confinement" and "was committed while the defendant was engaged in the perpetration of robbery." To the contrary, the record reveals that evidence was adduced to support submissions of these statutory aggravating circumstances but the jury made no finding as to these circumstances. Mere submission of the same was not im-

proper and no prejudice could have resulted therefrom. This claim is denied.

### III. Motion for Postconviction Relief.

■ On appeal of the denial of his 29.15 motion, defendant contends trial counsel was ineffective in failing to give an opening statement in the guilt and penalty phases of trial, in failing to present argument in support of his motion for a directed verdict, and in failing to request another mental examination. These points were not raised in defendant's original motion but only in the amended motion, which was not verified by defendant. Though defendant's counsel attached a certificate stating that the motion was true and correct to the best of his knowledge and he knew of no additional grounds or allegations that could be raised in behalf of defendant, the verification requirement of Rule 29.15(f) has been held to be a jurisdictional prerequisite, *Mills v. State*, 769 S.W.2d 469, 470 (Mo. App.1989), and this Court's review is limited to grounds raised in the original motion, *Sloan v. State*, 779 S.W.2d 580, 582 (Mo. banc 1989), none of which have been presented on appeal.[2]

2. Though the point is not properly raised, we have gratuitously reviewed defendant's claims of ineffective assistance of counsel and find them untenable. The evidence of guilt was overwhelming and the state's case rested on abundant direct and circumstantial evidence. Defense counsel vigorously cross examined the state's witnesses but was extremely handicapped by the limited, nearly nonexistent evidence to contradict the prosecution witnesses. He skillfully attacked the principal state's witness Echols (the Nevada cellmate of defendant), but except to exploit the inconsistencies and shortcomings of the state's case, defense counsel necessarily relied on the defense of "not guilty by reason of a mental disease or defect excluding responsibility." Evidence supporting this defense was presented and argued at length (more than eleven pages of the final argument by defense counsel). During the guilt phase, defendant called as witnesses only his mother and a psychiatrist, who both testified regarding the defense of mental disease or defect. During the penalty phase, defendant's sole witness was his wife, as defendant chose not to testify during either stage. Defense counsel testified in the 29.15 hearing that he made the tactical decision not to present an opening statement. It goes without saying that counsel believed his best strategy was to attack the credibility of state's witness Echols together with carefully probing

for discrepancies in the state's case, and to save for the end evidence of mental disease or defect. Such does not cry out that there be an opening statement preceding presentation of defendant's evidence. Instead this was a matter of trial strategy and the motion court's finding in this regard was not clearly erroneous. *See Boggs v. State*, 742 S.W.2d 591, 594–95 (Mo.App.1987). The same may be said of counsel's failure to present oral argument in support of defendant's motions for acquittal at the close of the state's case and at the close of all the evidence. Counsel had presented his points fully in the motions and there was little need to repeat matters posited there. This performance cannot be described as ineffective to a degree requiring reversal.

As to counsel's failure to obtain another mental examination, again he made a tactical decision not to do so, realizing that the two evaluations then in hand had been entirely inconsistent. Counsel understood that he would have been obligated to provide the results of any mental examination to the state, and he was confronted with the risk of obtaining an evaluation unfavorable to defendant which would add to the difficulties then confronting him. The risk outweighed the possible benefit. Defendant fails to demonstrate ineffective assistance of counsel in this respect.

### IV. Independent Review.

Finally we make our independent review of the death sentence pursuant to § 565.035.3, RSMo 1986. In so doing, we first determine that the evidence supports the aggravating circumstances found by the jury. Defendant's prior convictions were established beyond question, as was the fact of his escape from lawful confinement. The jury also found the murder of Melba Wampler involved torture and depravity of mind and was thus outrageously or wantonly vile, horrible, or inhuman, and further, was committed while defendant was engaged in the unlawful homicide of Harold Wampler. Defendant has never contested the sufficiency of the abundant evidence to support his conviction, and it is equally well-established that he was at least an accomplice in the murder of Harold Wampler. The evidence is also clear that the murder involved torture and depravity of mind and was thus outrageously or wantonly vile, horrible, or inhuman. Melba Wampler's hands and feet were bound with thick duct tape, which was also fastened across her mouth, and the bruises revealed in the photos admitted into evidence are consistent with brutal beatings across the face.

At last we reach our proportionality review to determine whether the death sentence here "is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime, the strength of the evidence and the defendant." § 565.035.3(3). The uncontroverted evidence, including defendant's confession to another prisoner, overwhelmingly supports defendant's conviction, and we note that the crime is similar to others in which the death penalty has been imposed for a murder committed in connection with another crime perpetrated upon the victim. *State v. Kilgore*, 771 S.W.2d 57, *cert. denied*, —— U.S. ——, 110 S.Ct. 211, 107 L.Ed.2d 164 (1989); *State v. Griffin*, 756 S.W.2d 475 (Mo. banc 1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 3175, 104 L.Ed.2d 1036 (1989); *State v. Murray*, 744 S.W.2d 762 (Mo. banc 1988), *cert. denied*, 488 U.S. 871, 109 S.Ct. 181, 102 L.Ed.2d 150 (1988); *State v. Walls*, 744 S.W.2d 791 (Mo. banc 1988), *cert. denied*, 488 U.S. 871, 109 S.Ct. 181, 102 L.Ed.2d 150 (1988); *State v. Foster*, 700 S.W.2d 440 (Mo. banc 1985), *cert. denied* 476 U.S. 1178, 106 S.Ct. 2907, 90 L.Ed.2d 993 (1986); *State v. Johns*, 679 S.W.2d 253 (Mo. banc 1984), *cert. denied*, 470 U.S. 1034, 105 S.Ct. 1413, 84 L.Ed.2d 796 (1984); *State v. Gilmore*, 681 S.W.2d 934 (Mo. banc 1984); *State v. Lashley*, 667 S.W.2d 712 (Mo. banc 1984), *cert. denied*, 469 U.S. 873, 105 S.Ct. 229, 83 L.Ed.2d 158 (1984); *State v. Gilmore*, 661 S.W.2d 519 (Mo. banc 1983), *cert. denied*, 466 U.S. 945, 104 S.Ct. 1931, 80 L.Ed.2d 476 (1984); *State v. Laws*, 661 S.W.2d 526 (Mo. banc 1983), *cert. denied*, 467 U.S. 1210, 104 S.Ct. 2401, 81 L.Ed.2d 357 (1984).

We further find that the death sentence is not disproportionate in regard to this particular defendant, who, though only thirty years of age at the time of the slaying, had been previously convicted of twenty-one other crimes, including rape, sodomy, assault with intent to rape, robbery, burglary, assault with a dangerous weapon, and possession of a sawed-off shotgun. Further, defendant expressed no remorse for his crime, but instead boasted to a fellow inmate of his deeds, stating that it is "funny" to witness a person being shot, and the evidence suggests that defendant feigned mental illness in order to avoid the consequences of his conduct. Finally, there is no indication that the death sentence was imposed here under the influence of passion, prejudice or any other arbitrary factor.

Affirmed.

BLACKMAR, C.J., ROBERTSON, COVINGTON, BILLINGS and HOLSTEIN, JJ., and LEVITT, Senior Judge, concur.

HIGGINS, J., not sitting.