

# In the Missouri Court of Appeals
# Eastern District

## DIVISION THREE

| | | |
|---|---|---|
| JOHN R. WRIGHT III, | ) | No. ED110335 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Charles County |
| v. | ) | Cause No. 2011-CC01168 |
| | ) | |
| STATE OF MISSOURI, | ) | Honorable Rebeca Navarro-McKelvey |
| | ) | |
| Respondent. | ) | Filed: June 6, 2023 |

## Introduction

John Wright III appeals the circuit court's judgment denying his amended Rule 29.15[1] motion after an evidentiary hearing. Because Wright failed to demonstrate that the circuit court clearly erred in denying his motion, the judgment is affirmed.

## Factual and Procedural Background

The State charged Wright with one count each of first-degree robbery, armed criminal action, and second-degree assault. The evidence adduced at trial showed that Wright ran from a traffic stop one evening after providing officers with a fake name and date of birth. The next morning, while attempting to find a way home, Wright waited outside the home of Jimmie VanCamp ("Victim"). When Victim came out of his house and began to back his truck down the

---

[1] All rule references are to the Missouri Supreme Court Rules (2021).

driveway, Wright threw a landscaping paver at the passenger window. Wright then entered the truck and struck Victim in the head with the paver and his fists, at which point the paver fell on the floor of the truck. Victim managed to escape, and Wright got in the driver's seat and fled. Victim's neighbor, a registered nurse, administered first aid to Victim. Victim had a gaping wound above his eyebrow, which revealed his skull and bled profusely. Victim suffered a concussion and required nineteen stitches.

Responding officers arrived at Victim's home and examined the bed of pavers on the side of the garage, finding that one was missing. The officers were unable to locate the missing paver anywhere at the scene. Police later located Wright, who provided a statement after being advised of his Miranda rights. Wright admitted to taking a paver from the side of Victim's garage and throwing it at the passenger window of Victim's truck. Wright also admitted entering the truck and striking Victim, but denied striking Victim with the paver. Wright also admitted that he was under the influence of drugs and had difficulty remembering if he used the paver in the assault. Wright told police that he abandoned the truck in a remote wooded area and directed them to that location. The officers testified at trial that they would not have been able to locate the truck without Wright's assistance. While the paver was never located, the State emphasized that there were many places in the area where it could have been hidden or discarded.

At trial, the State also presented testimony from a DNA analyst employed by the police department. The DNA analyst testified that he tested two sets of swabs collected from the pavers that remained on the side of Victim's house. The DNA analyst testified that DNA consistent with Wright's was present in one set of swabs and that a partial DNA profile consistent with Wright was detected in another. The DNA analyst also testified that there was no blood present in the

swabs and that Victim was excluded as the source of the profile. Wright's counsel did not cross-examine the DNA analyst.

Wright's counsel reserved his opening statement, but later elected not to give one. Counsel introduced the written statement of Victim's neighbor during her cross-examination, but the defense did not otherwise present any evidence. Following the close of evidence, the Court instructed the jury on the relevant charges. The instructions included a definition for the term "dangerous instrument," (Instruction 9), as that term is used in the armed criminal action verdict director (Instruction 13). Both instructions followed the format provided in the MAI-CR.[2] Specifically, Instruction 9 stated:

> As used in these instructions, the term "dangerous instrument" means any instrument, article or substance which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury.

During its deliberation, the jury submitted the following written question to the circuit court: "Could the defendants [sic] fists be considered a dangerous instrument? As stated in Instruction #9 in reference to Instruction #13[.]" After conferring with counsel, the circuit court responded by stating: "I am not permitted to directly answer your question. You are instructed to be guided in your deliberations by the instructions you have received from the Court and by the evidence as you recall it." Wright's counsel did not object to the circuit court's response. The jury convicted Wright of one count each of second-degree robbery, armed criminal action, and third-degree assault.

Wright appealed the circuit court's judgment, arguing in part, that the court plainly erred by refusing to directly answer the jury's question because a prior decision of this Court, *State v. Evans*, 455 S.W.3d 452 (Mo. App. E.D. 2014), "clearly holds that a defendant's fists do not meet

---

[2] MAI-CR 4th 433.00; 426.02 (2019).

3

the statutory definition of a 'dangerous instrument.'" *State v. Wright*, 608 S.W.3d 790, 798 (Mo. App. E.D. 2020). This Court rejected that argument on direct appeal, holding that "it was not incorrect for the trial court to refer the jury to the instructions and the evidence presented" and denied Wright's claim. *Id*. at 797–98. This Court held that "[a]lthough the holding in *Evans* answers the jury's question, the court's response was well within its discretion and was the safest, most favored response." *Id*. at 798 (internal quotation marks and citations omitted).

Wright then filed the motion to vacate, set aside, or correct the judgment and sentence pursuant to Rule 29.15 that forms the basis for this appeal. Wright argued that his trial counsel was ineffective for unreasonably failing to: (1) object to the circuit court's response to the jury's question concerning whether fists can be considered a "dangerous instrument," (2) cross-examine the State's DNA analyst concerning the lack of Victim's DNA on the landscaping pavers, and (3) give an opening statement. Wright also argued that he was prejudiced as a result of counsel's failures.

The circuit court held an evidentiary hearing at which Wright's counsel testified. Counsel testified that he did not object to the circuit court's response to the jury's question because he felt that it was "obvious" from the instructions that fists were not a dangerous instrument. Further, he testified that the State never argued that fists were a dangerous instrument. Counsel stated that he thought the jury's question was a "favorable" question, leading him to believe that the jury was "leaning towards an acquittal."

Counsel then testified that he could not recall the results of the DNA analyst's report regarding whether Victim's DNA was present on the swabs collected from the remaining pavers. Counsel was given the report to refresh his recollection and confirmed the results showed that

4

Victim's DNA was not present in the swabs. Counsel was not further questioned about his decision not to cross-examine the State's DNA analyst.

Finally, counsel testified that he elected not to present an opening statement because he had several potential defenses that could not be consistently argued together and he wanted to avoid making promises to the jury that he could not deliver at trial. Counsel testified that "it seemed safer to tell the story through the witnesses and closing argument" and confirmed that he had discussed this strategy with Wright before trial.

After the evidentiary hearing, the circuit court issued its findings of fact, conclusions of law, and judgment denying Wright relief. This appeal follows.

## Standard of Review

Appellate review of a judgment entered under Rule 29.15 is "limited to a determination of whether the findings and conclusions of the [circuit] court are clearly erroneous." Rule 29.15(k). The circuit court's findings and conclusions are clearly erroneous only if, after a review of the entire record, the appellate court is left with the definite and firm impression that a mistake has been made. *Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987). "We defer to the [circuit] court's greater ability to judge the credibility of the witnesses." *Moore v. State*, 407 S.W.3d 172, 175 (Mo. App. E.D. 2013). "This Court presumes that the [circuit] court's findings are correct." *McDaniel v. State*, 460 S.W.3d 18, 24 (Mo. App. E.D. 2014). We must uphold the circuit court's judgment if it is sustainable on any ground. *Moore v. State*, 659 S.W.3d 635, 639 (Mo. App. E.D. 2023).

## Discussion

Wright asserts that the circuit court clearly erred in denying his Rule 29.15 motion after an evidentiary hearing because his trial counsel was ineffective for unreasonably failing to: (1) object

5

to the circuit court's answer to the jury's question and propose an alternative response stating that fists are not a "dangerous instrument," (2) cross-examine the State's DNA analyst and emphasize the lack of Victim's DNA in the swabs collected from the remaining pavers; and (3) present an opening statement. Wright argues that but for counsel's failures, he would have been acquitted of armed criminal action.

To establish that counsel was ineffective, the defendant must show (1) that counsel's performance did not conform to the degree of skill, care, and diligence of a reasonably competent attorney and (2) that the defendant was thereby prejudiced. *Williams v. State*, 386 S.W.3d 750, 752 (Mo. banc 2012); *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The defendant "must satisfy *both* the performance prong and the prejudice prong to prevail on an ineffective assistance of counsel claim." *Sanders*, 738 S.W.2d at 857. If either *Strickland* prong is not satisfied, we need not consider the remaining prong, and the ineffective assistance of counsel claim necessarily fails. *Id*.

The performance prong is determined by "an 'inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind.'" *McLemore v. State*, 635 S.W.3d 554, 559 (Mo. banc 2021) (quoting *Harrington v. Richter*, 562 U.S. 86, 110 (2011)). "The question in an ineffective assistance claim is not whether counsel could have or even, perhaps, should have made a different decision, but rather whether the decision made was reasonable under all the circumstances." *Johnson v. State*, 406 S.W.3d 892, 901 (Mo. banc 2013) (internal quotation marks and citation omitted). "There is a strong presumption that counsel's conduct fell within the 'wide range of reasonable professional assistance.'" *Tucker v. State*, 468 S.W.3d 468, 473 (Mo. App. E.D. 2015) (quoting *Strickland*, 466 U.S. at 689). "[The defendant] bears the burden of overcoming

6

that presumption by showing that, in light of the circumstances, counsel's actions were not reasonable trial strategy[.]" *Id*.

Finally, to establish the prejudice prong, the defendant "must show there is a probability sufficient to undermine confidence in the outcome 'that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *McLemore*, 635 S.W.3d at 561 (quoting *Strickland*, 466 U.S. at 694).

**Point I**

In his first point on appeal, Wright asserts that the circuit court erred in denying his claim that counsel was ineffective for failing to object to the court's answer to the jury's question, which referred the jury to the instructions given and evidence presented. To establish an ineffective assistance of counsel claim regarding trial counsel's failure to object, Wright must demonstrate that the "objection would have been meritorious and the failure to object resulted in a substantial deprivation of his right to a fair trial." *Marshall v. State*, 567 S.W.3d 283, 291 (Mo. App. E.D. 2019).

This Court has already determined that there was no legal error in the circuit court's answer. In Wright's direct appeal, this Court held that the response was "well within its discretion" and the "safest, most favored response." *Wright*, 608 S.W.3d at 798 (internal quotation marks and citations omitted). Wright is bound by this determination and cannot relitigate it in a postconviction motion. *See Anderson v. State*, 196 S.W.3d 28, 38 (Mo. banc 2006) (noting that a determination on direct appeal that there was "no error of law" precludes relitigation in a Rule 29.15 motion even following plain error review and distinguishing a finding of "no plain error").

Because this Court has previously determined that the circuit court's answer was legally correct, Wright cannot demonstrate that an objection to the answer would have been meritorious.

Counsel will not be found ineffective for failing to make non-meritorious objections. *Storey v. State*, 175 S.W.3d 116, 132 (Mo. banc 2005).

Further, counsel's testimony at the evidentiary hearing demonstrates that his lack of objection to the circuit court's response was reasonable trial strategy. Counsel testified that he did not object because he believed it was "obvious" from the law stated in the instructions that fists cannot be a dangerous instrument. Reasonable decisions of trial strategy cannot support an ineffective assistance of counsel claim. *Worthington v. State*, 166 S.W.3d 566, 573 (Mo. banc 2005).

Point denied.

### Point II

In his second point on appeal, Wright argues that the circuit court clearly erred in denying his claim that counsel was ineffective for unreasonably failing to cross-examine the State's DNA analyst. Specifically, Wright asserts that counsel failed to emphasize the fact that Victim's DNA was not detected on any of the pavers remaining at the crime scene. Wright argues that the lack of Victim's DNA on the pavers demonstrates that Wright did not strike Victim with any of the pavers tested and that counsel's failure to cross-examine the DNA analyst about this fact deprived him of this evidence.

"The manner in which cross-examination is conducted, and the extent of cross-examination, are matters of trial strategy best left to the judgment of trial counsel." *State v. Hall*, 982 S.W.2d 675, 686 (Mo. banc 1998) (internal quotation marks and citation omitted). When a defendant claims that counsel failed to sufficiently cross-examine a witness, the defendant "must specifically allege and prove the information his attorney failed to elicit, that reasonable

questioning would have revealed it, and how that information would have aided his position." *Whitt v. State*, 655 S.W.3d 202, 209 (Mo. App. E.D. 2022).

Fatal to Wright's argument is that the State did not argue that Wright struck Victim with any of the pavers left at the scene. Rather, the State argued that the paver used to strike Victim had fallen to the floor of the truck during the attack and that Wright later disposed of it. The paver that was used in the attack was never located. As a result, the analyst's failure to detect Victim's DNA on the pavers remaining at the scene was entirely consistent with the State's theory. Cross-examination of the analyst on this issue would not have aided Wright's position.

Wright has also failed to rebut the presumption that counsel's decision not to cross-examine the analyst was reasonable trial strategy because Wright's postconviction counsel did not examine Wright's trial counsel on this issue during the evidentiary hearing. During the evidentiary hearing, trial counsel testified that he was aware of the analyst's report and acknowledged that the report showed that Victim's DNA was not detected on any of the swabs taken from the pavers. At that point, postconviction counsel moved on to another subject, failing entirely to question trial counsel regarding the basis for his decision not to cross-examine the analyst. The strong presumption that counsel had a strategic reason for his decision is not overcome even when counsel "fails to verbalize a trial strategy for his decision." *Rios v. State*, 368 S.W.3d 301, 310 (Mo. App. W.D. 2012). Reasonable choices of trial strategy, such as here, cannot serve as the basis of an ineffective assistance of counsel claim. *Worthington*, 166 S.W.3d at 573.

Point denied.

## Point III

In his final point on appeal, Wright argues that the circuit court clearly erred in denying his claim that counsel was ineffective for failing to present an opening statement. Specifically, Wright

9

argues that "[c]ounsel unreasonably failed to explain the general nature of its case and its core issue."

When the record demonstrates that the decision not to give an opening statement was a matter of reasonable trial strategy, such a decision cannot support an ineffective assistance of counsel claim. *See State v. Oxford*, 791 S.W.2d 396, 401 n. 2 (Mo. banc 1990). In *Oxford*, the defendant appealed the denial of his Rule 29.15 motion after an evidentiary hearing, asserting that his trial counsel was ineffective for failing to give an opening statement during the guilt and penalty phases of his trial. *Id*. at 401. Trial counsel testified at the evidentiary hearing that he made the "tactical decision" not to present an opening statement. *Id*. at 401 n.2. The Court noted that "counsel believed his best strategy was to attack the credibility of the state's witness [] together with carefully probing for discrepancies in the state's case, and to save for the end evidence of mental disease or defect." *Id*. The Court concluded that the decision not to give an opening statement was a matter of trial strategy, and therefore the circuit court's denial of the defendant's Rule 29.15 motion was not clearly erroneous. *Id*.

Like the trial counsel in *Oxford*, Wright's counsel testified at the evidentiary hearing that his strategy was to present the case through examining the State's witnesses and in closing argument. *See id*. As the Court held in *Oxford*, counsel's testimony shows that his decision not to give an opening statement was reasonable trial strategy. *See id*. Further, counsel testified that he wanted to avoid making promises to the jury that he could not deliver during trial. This concern was reasonable given that "[t]he failure to present evidence promised to the jury is a serious failure and any attorney who does so, 'opens himself up to criticism of the effectiveness—or ineffectiveness—of his representation of the defendant.'" *Hawkins v. State*, 512 S.W.3d 112, 116 (Mo. App. E.D. 2017) (quoting *Midgyett v. State*, 392 S.W.3d 8, 13 (Mo. App. W.D. 2012)).

Because the record demonstrates that counsel's decision not to present an opening statement was reasonable trial strategy, the alleged failure to do so cannot support Wright's ineffective assistance of counsel claim. *See Oxford*, 791 S.W.2d at 401 n. 2.

Point denied.

## Conclusion

For the foregoing reasons, the judgment is affirmed.

_____
John P. Torbitzky, J.

Gary M. Gaertner, Jr., P.J., and
Cristian M. Stevens, J., concur.