STATE of Missouri, Plaintiff–
Respondent,

v.

David Lee CLAY, Sr., Defendant–
Appellant.

David Lee CLAY, Sr., Movant–Appellant,

v.

STATE of Missouri, Respondent–
Respondent.

Nos. 54684, 58390.

Missouri Court of Appeals,
Eastern District,
Division Three.

Aug. 20, 1991.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Sept. 23, 1991.

Application to Transfer Denied
Nov. 19, 1991.

Sarah B. Scott, David C. Hemingway, St. Louis, for appellant.

William L. Webster, Atty. Gen., Elizabeth L. Ziegler, Andrea K. Spillars, Asst. Attys. Gen., Jefferson City, for respondent.

CRANE, Judge.

A jury convicted David Lee Clay, Sr. of one count of murder in the first degree, in violation of § 565.020.1 RSMo 1986, one count of burglary in the first degree in violation of § 569.160 RSMo 1986, and one count of armed criminal action, in violation of § 571.015.1 RSMo 1986. Clay was sentenced as a prior offender to life imprisonment without parole for the murder, fifteen years imprisonment for the burglary and life imprisonment for the armed criminal action, the sentences to be served consecutively. Clay's motion for post-conviction relief under Rule 29.15 was denied. Clay appeals from the judgment of the trial court and the order of the motion court. We affirm the convictions and remand to the motion court for findings.[1]

### Direct Appeal

Clay's first point on direct appeal is that the trial court committed plain error in forcing him to go to trial with a public defender rather than counsel of his choice. There is nothing in the record that indicates the trial court ever took this action.

We cannot review a question where there is no record of any action by the trial court to review. The only record relating to this issue consists of statements of counsel to the trial judge, recorded in the trial transcript, advising him that they had earlier that day appeared before another judge, Judge Drumm, that the request by a private attorney to enter her appearance and for a continuance was made to and denied by Judge Drumm, that the new attorney was not prepared and that the attorney of record was prepared. There is no written motion in the record by which the private

attorney requested to enter her appearance and a continuance. There is no minute entry of either this request or any action taken thereon. There is no transcript of any oral proceedings on any such request. More importantly, the trial judge was not asked to and did not rule on the issue.

Under the circumstances there is no record of a motion having been made or ruled on. The discussion before Judge Drumm was "off the record".

> That means they did not consider what was said to be part of the conference or trial of this case. If the attorneys or the court had desired to place "on the record" statements, discussion, or proceedings which took place "off the record", it was their obligation to do so at the time the statement or event occurred.

*State v. Hoopes,* 534 S.W.2d 26, 32 (Mo. banc 1976). *See also State v. Brown,* 744 S.W.2d 809 (Mo. banc 1988), applying rule to unrecorded, in chambers motion to suppress. It is essential, in order to be heard on appeal, that defendant renew any pretrial request for a continuance and to substitute counsel before the trial judge. *State v. Van Horn,* 625 S.W.2d 874, 878 (Mo.1981). Point I is denied.

For his second point Clay claims the trial court erred in allowing Sgt. Patrick Knisley to identify certain shell casings and bullet fragments collected at the scene and in allowing a ballistics expert to testify to his comparison of this evidence with similar evidence found at Clay's home on the grounds that the evidence was identified only by Sgt. Knisley.

The charges in this case arose from the killing of Roosevelt Mixon. He was accosted as he entered the house of Clay's ex-wife, Clara Harris, and was shot seventeen times. Clay's son got an initial glimpse of the assailant then hid in the bathroom during the attack. Sergeant Patrick Knisley of the Wellston Police Department was one of the first officers to arrive on the scene

---

1. We previously decided this case on May 14, 1991. The Missouri Supreme Court subsequently granted application for transfer and retransferred to us for reconsideration in light of *Luleff*

*v. State,* 807 S.W.2d 495 (Mo. banc 1991) and *Sanders v. State,* 807 S.W.2d 493 (Mo. banc 1991), both of which concern Rule 29.15 proceedings.

in the early hours of November 1, 1986. Detective Bruenning of the St. Louis County Police Identification Bureau arrived later. Sgt. Knisley went through the house with Det. Bruenning and watched him dig bullet fragments from walls and pick up shell casings. He observed Det. Bruenning put each piece of evidence into an envelope, mark it and seal it. He further witnessed Det. Bruenning putting the sealed evidence into the police ID van and drive away with it. He testified that the evidence at trial appeared to be the packages marked and sealed by Det. Bruenning. He recognized both the handwriting and the information placed thereon. He testified that the shell casings and bullet fragments appeared to be in the same condition as when they were retrieved. Detective John Kaltenbronn, a St. Louis County police officer and firearm and toolmark examiner, received the sealed evidence envelopes directly from Det. Bruenning later that same morning. He marked the envelope with the laboratory number, his initials, his DSN and the complaint number. Several days later, Clay's son told police that he was ninety percent sure that Mixon's assailant was his father. On November 5, spent shells were obtained from Clay's home pursuant to a search warrant. Det. Kaltenbronn compared the spent shells obtained from the Harris home with the spent shells obtained from Clay's home and was able to conclude that 16 of the spent shells from the Harris home had been fired from the same weapon as five of the spent shells from Clay's home. He further testified that only one weapon could have fired those 21 shells. Det. Bruenning died before trial.

Clay's claim is that the trial court erred in allowing Sgt. Knisley "to identify" the shell casings and bullet fragments and in allowing Det. Kaltenbronn to testify to evidence identified by Det. Knisley. This point does not raise error in the *admission* of the shell casings into evidence. However, error in the admission of the shell casings is raised in the argument and is addressed by the state in its response. We will review the issues raised in the argument under this point in order to determine this issue on its merits.

Clay contends that the chain of custody of the shell casings and bullet fragments retrieved in the Harris home was not established because there was no witness who could testify to Det. Bruenning's custody of the evidence from the time Sgt. Knisley observed him take the sealed evidence away in the van until later that morning when Det. Kaltenbronn received the sealed evidence from him. We disagree.

In order for a physical exhibit to be admitted into evidence, foundation testimony must provide reasonable assurance that the exhibit sought to be introduced is the same article and is in the same condition as when received by the state. *State v. Collins*, 601 S.W.2d 640, 641 (Mo.App. 1980). The same foundation must be laid in order to admit testimony showing the results of tests performed on a physical exhibit. *State v. Dunagan*, 772 S.W.2d 844, 856 (Mo.App.1989). Where there is a material question concerning the identity or condition of a physical exhibit offered at trial, which cannot be resolved by direct identification, identity and condition may be established by chain of custody. Chain of custody is established by calling witnesses with knowledge of the circumstances of the custody of the exhibit and the processes to which it was subjected from the time it was recovered until trial. This entails "testimonially tracing the chain of custody of the item with sufficient completeness to render it improbable that the original item has either been exchanged with another or has been contaminated or tampered with." *Storm v. Ford Motor Company*, 526 S.W.2d 875, 878 (Mo.App.1975) (citations omitted); *State v. Price*, 731 S.W.2d 287, 290 (Mo.App.1987). Factors which may be considered include the nature of the article, circumstances surrounding its preservation and custody, and the likelihood of others tampering with it. It is sufficient to establish chain of custody if the circumstances show a reasonable assurance that the evidence has not been altered or substituted between time of seizure and time of trial. *State v. Johnson*, 710 S.W.2d 392, 393 (Mo. App.1986).

Under the reasonable assurance standard, the state is not required to account for every hand-to-hand transfer of an exhibit between the time it was obtained and its introduction at trial, nor is it required to exclude every possibility that the evidence had been disturbed. *State v. Fels*, 741 S.W.2d 855, 857 (Mo.App.1987). Likewise the evidence need not be continually watched. *State v. Day*, 506 S.W.2d 497, 502 (Mo.App.1974).

■ The admission of demonstrative evidence, including the determination of whether the chain of custody has been properly established, is within the discretion of the trial court. *State v. Dudley*, 724 S.W.2d 517, 522 (Mo.App.1986). The trial court is in the best position to determine that there has been no improper tampering with or substitution of an exhibit. *Id.* The trial court did not abuse its discretion in admitting the shell casings and the bullet fragments and the results of the tests thereon into evidence. The testimony of the officer who physically gathered that evidence and transported it was not necessary to establish chain of custody where there was eyewitness testimony to all crucial steps taken by that officer and the likelihood of tampering with or substitution of the evidence while in his custody was remote. Sgt. Knisley testified that he witnessed Det. Bruenning retrieve the shell casings, place the evidence into bags, mark the bags and seal them and place them in the police ID van and take them with him. Det. Kaltenbronn testified that Det. Bruenning delivered the sealed evidence to him that same morning. These officers' eyewitness testimony provides reasonable assurance that the shell casings were not substituted. *Johnson, supra*, 710 S.W.2d at 393.

Furthermore, Det. Knisley testified that the exhibits at trial appeared to be the same as those retrieved at the scene. He recognized the handwriting and the written information placed thereon by Det. Bruenning. He testified that the shell fragments and bullets appeared to be in the same condition. Testimony that the exhibit "appears" to be the same is usually sufficient identification in establishing chain of custody. *State v. Scott*, 491 S.W.2d 514, 520 (Mo. banc 1973); *State v. Conway*, 740 S.W.2d 320, 325 (Mo.App.1987). The identification of an exhibit need not be absolutely unqualified to make it admissible. *Scott, supra; Conway, supra.*

The nature of the shell casings was such that the likelihood of their being altered was remote. Only one firearm was capable of making the distinctive markings on the shell casings. The evidence does not disclose that that firearm was recovered. The only time period which is argued to constitute a break in the chain of custody is the several hours the evidence was in the possession of Det. Bruenning, four days before the shell casings were seized from Clay's home. The likelihood of shell casings from Clay's home being substituted four days before they were seized is wholly remote.

Under these circumstances there was a reasonable assurance that the evidence was not altered or substituted. The admission of the shell casings was within the trial court's discretion. As the trial judge correctly pointed out, any weakness in identification was properly the subject of cross-examination, and was for the jury to consider in assessing the weight of the evidence. *State v. Malone*, 694 S.W.2d 723, 727 (Mo. banc 1985), *cert. denied*, 476 U.S. 1165, 106 S.Ct. 2292, 90 L.Ed.2d 733 (1986); *Scott, supra*, 491 S.W.2d at 520. Point II is denied.

The judgment of the trial court is affirmed.

### 29.15 Appeal

Clay raises one point in his appeal from the order denying relief under Rule 29.15. He asserts that the motion court erred in ruling that his trial counsel was not ineffective in informing the jury of his prior convictions during voir dire, and in not knowing a crucial state witness had died. These issues were not raised in Clay's original *pro se* motion but were first raised in his amended 29.15 motion which was not timely filed nor verified.

The time limitations contained in Rule 29.15 are valid and mandatory. *Day v. State*, 770 S.W.2d 692, 695 (Mo. banc), *cert. denied* 493 U.S. 866, 110 S.Ct. 186, 107 L.Ed.2d 141 (1989). Ordinarily issues raised for the first time in an amended motion filed outside the time limits of Rule 29.15(f) are "time barred and procedurally waived." *State v. White*, 790 S.W.2d 467, 474 (Mo.App.1990); *Sloan v. State*, 779 S.W.2d 580, 582 (Mo. banc 1989), *cert. denied* —— U.S. ——, 110 S.Ct. 1537, 108 L.Ed.2d 776 (1990). Moreover, an unverified amended motion is a nullity which fails to invoke the jurisdiction of the trial court. *Malone v. State*, 798 S.W.2d 149, 151 (Mo. banc 1990).

■ However the Supreme Court has recently modified the strict application of the rule barring untimely amendments, *Sanders v. State*, 807 S.W.2d 493 (Mo. banc 1991), and unverified amendments. *State v. White*, 813 S.W.2d 862 (Mo. banc 1991). If movant can establish that the failure to verify and timely file is caused by the inattention of counsel, the amended motion can be filed and ruled on.

Because Clay's motion was heard prior to these decisions, there was no hearing in the motion court and, consequently, no findings on the cause of the lack of verification and untimeliness. Accordingly, we must remand this matter to the motion court for a determination of the cause of the lack of verification and untimely filing. *Sanders v. State*, 807 S.W.2d 493, 495 (Mo. banc 1991). The motion court must make a factual inquiry into the cause of the violations by holding an evidentiary hearing or, if the facts are undisputed, by examining the record. *White*, at 864. The court must make findings of fact on the question of whether the untimeliness and failure to verify results from the negligence or intentional conduct of Clay or from the inattention of counsel. *See Luleff v. State*, 807 S.W.2d 495, 498 (Mo. banc 1991). If the failure to timely file was Clay's fault, the filing is barred. *White*, 790 S.W.2d at 474. If the failure to verify was Clay's fault, the

amended motion is a nullity and the motion court has no jurisdiction. *Malone*, 798 S.W.2d at 151. If, however, the untimeliness was counsel's fault, the motion court must treat the 29.15 motion as timely filed. *Sanders*, 807 S.W.2d at 495. And, if the failure to verify is counsel's fault, the trial court must take appropriate steps to have the amended motion verified so that it properly invokes the jurisdiction of the motion court. If, as a result of the motion court's findings, the amended motion is filed and verified, the motion court need not hold another hearing [2] on the merits of the amended motion, but must enter new findings and an order based on the properly filed amended motion.

The 29.15 proceeding is remanded to the motion court for further proceedings as outlined in this opinion.

REINHARD, P.J., and STEPHAN, J., concur.

---

**2.** The trial court held a hearing on the merits of Clay's amended 29.15 motion, even though it

was not timely filed or verified.