**STATE of Missouri, Respondent,**

v.

**Eric ROBINSON, Appellant.**

**Eric ROBINSON, Appellant,**

v.

**STATE of Missouri, Respondent.**

**Nos. 55056, 59275.**

Missouri Court of Appeals,
Eastern District,
Division Three.

June 23, 1992.

---

Cathy Rene Kelly, Loyce Hamilton, St. Louis, for appellant.

William L. Webster, Atty. Gen., Robert P. Sass, Robin H. Grissom, Asst. Attys. Gen., Jefferson City, for respondent.

CRIST, Judge.

Defendant appeals his convictions for four counts of robbery in the first degree, four counts of armed criminal action, and one count of assault in the first degree, for which he was sentenced to a total of twenty years' imprisonment. Defendant also appeals the denial of his Rule 29.15 motion without an evidentiary hearing. We affirm.

At approximately midnight on the evening of September 20, 1986, George Daaboul, Russell Venz, Alphons Torregrossa, and Gloria Maddalino left their jobs at the Clarion Hotel in downtown St. Louis. They walked to a nearby parking lot to see Ms. Maddalino's new car. Venz and Torregrossa took the car for a ride while Mr. Daaboul and Ms. Maddalino waited in the parking lot. Upon their return, Defendant walked up to the group with a gun in his

hand. Defendant ordered everyone to the ground and took their valuables. As Defendant was leaving, he stated he would shoot anyone who raised their head.

As Defendant walked away from the group, Mr. Daaboul got up and got into his car and drove at Defendant. Defendant fired a shot at Daaboul and then entered a waiting getaway car. During the ensuing car chase, Defendant fired six shots at Daaboul's car, hitting it twice.

A lineup was conducted by the police the next evening. All four victims identified Defendant as the robber. Defendant gave a statement to the police admitting to driving the getaway car.

Defendant was convicted of all nine counts and sentenced to a total of twenty years' imprisonment. On July 12, 1989, Defendant filed a *pro se* motion to vacate judgment and sentence under Rule 29.15. On September 11, 1989, Defendant filed a timely but unverified amended motion. On September 24, 1990, the motion court issued its findings of fact, conclusions of law, and order denying Defendant post-conviction relief. Defendant appealed his convictions and the denial of his post-conviction Rule 29.15 motion.

On June 18, 1991, this court remanded the case to the trial court for an evidentiary hearing to determine whether the prosecutor used his peremptory challenges in a racially discriminatory manner. *See State v. Robinson*, 811 S.W.2d 460 (Mo.App. 1991).

The trial court held an evidentiary hearing pursuant to this order. At the conclusion of this hearing, the trial court found that the prosecutor did not exercise his peremptory challenges in a racially discriminatory manner and denied Defendant's *Batson* challenge.

In his initial point on appeal, Defendant contends the trial court erred in overruling his motion to quash the panel. Defendant argues that the prosecutor's explanations about why the black jurors were struck did not constitute legitimate neutral explanations and were pretextual in that similarly situated white jurors were not struck.

This court must affirm the trial court's denial of Defendant's *Batson* challenge unless this court finds the decision of the trial court to be "clearly erroneous." *State v. Antwine*, 743 S.W.2d 51, 66[17] (Mo. banc 1987), *cert. denied*, 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988). Defendant bears the burden of demonstrating that the decision of the trial court was clearly erroneous and that the prosecutor's explanations were pretextual and not the true reasons for the use of the peremptory challenges. *Id.* 743 S.W.2d at 64. In determining whether the trial court's finding was clearly erroneous, this court must give deference to the trial court's finding because such a finding rests largely on the trial court's determination of credibility. *See Hernandez v. New York*, — U.S. ——, 111 S.Ct. 1859, 1869, 114 L.Ed.2d 395 [11] (1991). When evaluating the credibility of a prosecutor's explanations about the use of his peremptory challenges, the trial court is required to consider the "totality of the circumstances" surrounding the jury's selection process, including the race of the victim and witnesses, the prosecutor's questions and statements during *voir dire*, the court's past experience with the prosecutor, and the number of strikes used to remove members of the race in question. *Robinson*, 811 S.W.2d at 463.

At the evidentiary hearing, the prosecutor gave the following reasons for the use of his peremptory challenge to Jacqueline Cole:

> I struck her precisely because she worked as a teacher. It has been my experience that they are generally liberal. And I have traditionally been told throughout my tenure of the Circuit Attorney's Office that teachers are one group of people, among others, that we feel do not make good State's jurors. All things equal between her and anybody else, her being a teacher, that is, I would always opt to strike a teacher.

Defendant argues that the prosecutor's decision to use a peremptory challenge to remove Ms. Cole because she was a teacher was not a valid, race-neutral reason under

*Batson.* We disagree. The United States Supreme Court has defined a race-neutral explanation to be "an explanation based on something other than the race of the juror." *Hernandez,* 111 S.Ct. at 1866[4]. There is no racially discriminatory intent inherent in the prosecutor's explanation in this case. Defendant's claim in his brief that the State failed to strike a similarly situated juror is without merit. Defendant argues that venireperson Edward Neiger was a similarly situated juror who was not struck by the prosecutor. However, there is no indication in the record that Mr. Neiger was a teacher.

The prosecutor explained his peremptory challenge of Tammy Davis as follows. He stated she was unemployed, claimed she was fired as a security guard because of discrimination, and had a nephew who was arrested for burglary six months ago. The prosecutor stated that when he asked Ms. Davis whether or not she thought her nephew was treated fairly, she stated that she had no opinion. The prosecutor went on to state that he was concerned by her refusal to comment on whether she felt the police and the judicial system treated her nephew fairly.

■ *Batson* leaves room for the State to exercise its peremptory challenges on the basis of the prosecutor's "hunches" and past experience as long as the factors relied on are racially neutral. *State v. Michael Kempker,* 824 S.W.2d 909, 911 (Mo.1992). In this case the prosecutor expressed three separate reasons for using a peremptory strike to remove Ms. Davis. His feelings that an ex-security guard who believed she had been the target of discrimination might be hostile to the State and sympathetic to the Defendant were based on valid, race-neutral reasons. This "hunch" was adequate to support the prosecutor's peremptory challenge. Defendant's argument that there were three venirepersons similarly situated who were not stricken is again without merit.

■ The prosecutor explained that he struck Gregory Benson because first, he was unemployed, and second, he had no other responses to any of the prosecutor's questions. At the evidentiary hearing, Defendant's attorney did not attempt to argue that the prosecutor's reasons for striking Mr. Benson were pretextual. Further, Defendant's attorney did not identify any other venirepersons similarly situated to Mr. Benson who were not struck. The prosecutor's explanation that he would strike unemployed people before he would strike an employed person is not racially discriminatory or pretextual.

We find the trial court did not err in his finding that the prosecutor's explanations for his peremptory strikes were race-neutral. Defendant's point is denied.

■ Defendant next argues the trial court erred in allowing the State to introduce Defendant's inconsistent statements made to police officers under questioning. Police officers testified that Defendant told them that he had been with someone named Ivan Vincent that evening. The officers testified that Defendant stated that he drove the getaway car. Defendant also stated that Vincent dropped him off at home before anything occurred, stating that Vincent was going to make more money. Defendant objected to these statements, claiming surprise.

The report containing these statements had not been disclosed to Defendant's counsel prior to trial. Apparently the report pertained to a different case and did not become relevant until Defendant decided to testify. The trial court initially excluded the report and the statement contained therein under Rule 25.03. However, Defendant testified that he was at home all evening between the hours of 11:30 p.m. and 4:00 a.m. Following testimony the court reversed its earlier ruling and stated that it would allow the prosecutor to introduce Defendant's inconsistent statements through the testimony of the police officers as rebuttal witnesses. The court based the reversal of its ruling on *State v. Stuckey,* 680 S.W.2d 931 (Mo. banc 1984), and *State v. Brown,* 699 S.W.2d 512 (Mo.App.1985).

Defendant contends that these statements asserted an alibi and thus the State was required to disclose them even without

a request. The police officer testified that Defendant told him that he had gone home at 11:30 p.m. The officer further testified that Defendant stated that he had then at an unspecified time gone to the intersection of Jefferson and Pine Streets with Ivan Vincent. Defendant also stated to the police officer that he picked up a friend at Caleco's at 2 a.m. and stayed out with him until 5 a.m. Defendant's statements to the police officer did not assert an alibi. They merely contradicted Defendant's testimony at trial that he was at home between 2 a.m. and 5 a.m. Thus, the testimony simply bore on Defendant's credibility. "A defendant's own statements which were not revealed pursuant to discovery may be used in rebuttal of the defendant's testimony." *Stuckey,* 680 S.W.2d at 937[6].

Even if the trial court's admission of this evidence was in error, the court's denial of a requested sanction is an abuse of discretion only where admitting the evidence results in fundamental unfairness to the Defendant. *State v. Adams,* 791 S.W.2d 873, 878–879[15, 16] (Mo.App. 1990). In this case it is highly unlikely that the outcome of the case was altered or that the trial was fundamentally unfair. The evidence was overwhelming. Defendant admitted involvement in the robbery to police officers. All four victims identified Defendant as the perpetrator of the robbery. In light of such strong evidence of guilt, it is hard to see how Defendant could have been prejudiced. *See Richardson v. State,* 719 S.W.2d 912, 916[7] (Mo.App. 1986). Defendant's point is denied.

Defendant's final point on appeal is that the motion court erred in denying Defendant's Rule 29.15 motion without an evidentiary hearing. Defendant argues that he received ineffective assistance of counsel in that if his defense counsel had conducted pretrial discovery, she would have found exculpatory evidence of Defendant's innocence which did not emerge until trial. However, all of Defendant's claims on appeal were raised in an unverified amended motion. Instead of completing the verification provision, Defendant submitted a notarized signature on his motion.

A notarized signature is not a verification under the Rules. *Kilgore v. State,* 791 S.W.2d 393, 395[1] (Mo. banc 1990). Defendant's amended motion is therefore a nullity and preserves no claims for this court to review. *See Taylor v. State,* 800 S.W.2d 808, 810[1] (Mo.App.1990). Point denied.

Judgment affirmed.

PUDLOWSKI, P.J., and STEPHAN, J., concur.