**STATE of Missouri, Respondent,**

v.

**Lawrence DIXON, Appellant.**

**Lawrence DIXON, Appellant,**

v.

**STATE of Missouri, Respondent.**

Nos. 55144, 59790.

Missouri Court of Appeals,
Eastern District,
Division Four.

April 6, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 5, 1993.

Application to Transfer Denied June 29, 1993.

James S. McKay, St. Louis, for appellant.

William L. Webster, Atty. Gen., Joseph P. Murray, Asst. Atty. Gen., Jefferson City, for respondent.

KAROHL, Chief Judge.

Defendant, Lawrence Dixon, appeals from convictions of burglary in the first degree, § 569.160 RSMo 1986, and stealing over $150, § 570.030 RSMo 1986. The court sentenced defendant as a prior and persistent offender to a term of fifteen years on each count to be served consecutively for a total of thirty years. Additionally, defendant appeals the dismissal of his Rule 29.15 motion for post conviction relief after an evidentiary hearing. We have consolidated the appeals pursuant to Rule 29.-15(*l*).

After this appeal was briefed and argued we transferred the appeal to the Supreme Court. Thereafter, the Supreme Court decided *State v. Parker*, 836 S.W.2d 930 (Mo. banc), *cert. denied,* —— U.S. ——, 113 S.Ct. 636, 121 L.Ed.2d 566 (1992) and *State v. Starks*, 834 S.W.2d 197 (Mo. banc 1992). It held the state must provide race-neutral explanations for its peremptory strikes of African–Americans in response to a *Batson* challenge. After re-transfer and pursuant to this Court's order an evidentiary hearing was held. The trial court found the prose-

cutor's reasons for striking five black venirepersons credible and race neutral. It denied relief based on defendant's *Batson* challenge.

■ In a supplemental brief defendant claims a *Batson* violation in respect of one venireperson, juror, No. 587. The prosecutor's explanations on juror No. 587 were: "B/F" for the reasons that she was unemployed, "yawning" during the proceedings, gave "few answers" to questions propounded the panel, was "hostile appearing" and "inactive in an active panel."

At the hearing defendant responded: "as to . . ., 587, a black female, Mrs. Kelly had no specific answer. She did indicate she thought the juror seemed dumb, were the words in her notes."

We find the court complied with our order on remand. We hold the denial of relief on the basis of the peremptory strike of juror 587 was not clearly erroneous. *State v. Antwine*, 743 S.W.2d 51, 66 (Mo. banc 1987). The explanation presented in the 1992 hearing was not in the record of the 1988 trial. It was supported in part by trial notes.[1]

■ The demeanor of the prosecutor at trial and during the *Batson* hearing was a relevant matter for the trial court when considering decisions of the prosecutor based on subjective reasons to strike a venireperson. *Hernandez v. New York*, —— U.S. ——, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991). *State v. Metts*, 829 S.W.2d 585, 586 (Mo.App.1992).

We further observe there was no argument before the trial court that the stated reason for the strike was untruthful or pretextual. The *Batson* issue is rejected, defendant was not denied due process in the jury selection process.

■ The second direct appeal issue involves closing argument. Testimony of the victim proved a 5:00 a.m. burglary and stealing at her home. She was there and confronted by defendant. She was seventy-six years old and lived alone. Defendant

made himself at home during the remainder of the day. He came and went approximately six times. He talked to the victim. He told her he would take care of her and be her friend. He left about 2:00 p.m. with her television set. Because of a delay in reporting the crimes the victim's entire testimony was subject to a credibility problem.

In a statement to the police defendant admitted his actions at the victim's home but claimed everything he did was with the victim's consent. His written statement was in evidence.

The objectionable argument was "[w]ould *you* want him taking care of *your* grandmother?" [Our emphasis]. The objection, "personalizing." The court's ruling, "[t]he evidence came from the witness stand, follow the laws."

We do not fully understand the court's ruling. The objection implicated a rule of law not resolvable by the jury by reference to evidence. In context, the instruction to "follow the laws" is not meaningful. The argument is direct personalization. The objection should have been sustained. But was it prejudicial error not to sustain the objection? We hold that it was not.

The usual issues of identification of actor and method of acting in burglary and stealing cases are not at issue here. The only issue is consent or no consent. Defendant claimed he acted with consent. The victim testified no consent was given. The victim added a statement defendant offered to take care of her. The objectional argument tended to off-set defendant's claim of consent by pointing out, that (*a person like*) defendant was not acting with a motive to help out the elderly lady whose apartment he invaded for ten hours and who took her property. Given the single narrow issue, the nature of the defense and the evidence in this case we find no prejudicial error.

Defendant's third issue is directed at denial of a Rule 29.15 motion after an evidentiary hearing. The motion charges ineffec-

---

1. See *State v. Metts*, 829 S.W.2d 585, 588 (Mo. App.1992). We there suggest "in future cases" subjective observations supporting peremptory strikes should be made on the record. *Metts* was decided long after the present trial.

tive assistance of counsel by not proving a second door in the apartment from which he could have left unnoticed if he was committing crimes.

■ This point fails for two reasons. First, the *pro se* and amended motions are procedurally deficient under *State v. Bradley*, 811 S.W.2d 379, 383–384 (Mo. banc 1991). The motions were not verified. Second, given the "defense" of consent, a back-door alternative would be inconsistent. Defendant did not reject his written statement claiming consent. While acting with consent he would have no need or reason to escape by a second door, if there was one and if counsel had proven it was there. As a post-script, we would be surprised if there was evidence an inhabited apartment did not have a back door. Point denied. We affirm.

SMITH, P.J., and AHRENS, J., concur.

