Richard Dennis OXFORD, Appellant,

v.

Paul DELO, Appellee.

No. 94–1879.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 12, 1994.

Decided July 6, 1995.

Rehearing and Suggestion for Rehearing
En Banc Denied Sept. 8, 1995.*

---

* Richard S. Arnold, Chief Judge, McMillian, Woll-
man, and Murphy, Circuit Judges, would grant
the suggestion for rehearing.

Philip J. Adams, Leawood, KS, argued (Daniel L. Fowler, Overland Park, KS, on the brief), for appellant.

Frank A. Jung, Asst. Atty. Gen., argued for appellee.

Before FAGG, Circuit Judge, HEANEY, Senior Circuit Judge, and BOWMAN, Circuit Judge.

BOWMAN, Circuit Judge.

Richard Dennis Oxford appeals a final judgment entered in the District Court[1] denying his petition for a writ of habeas corpus under 28 U.S.C. § 2254 (1988). We affirm.

## I.

On the evening of November 14, 1986, Melba Wampler and her husband Harold disappeared after leaving a bar in Joplin, Missouri, in the company of Oxford and his companion Richard Brown. At the time, Oxford and Brown were fugitives from the Conner Correctional Center in Hominy, Oklahoma. The partially decomposed bodies of the Wamplers were discovered in the trunk of a car at a Kansas City motel on January 2, 1987. Following a jury trial in September 1988, Oxford was convicted of the murder of Melba Wampler and sentenced to death.[2]

Pursuant to Missouri Supreme Court Rule 29.15, Oxford filed a *pro se* motion to vacate the conviction. As required by Rule 29.15, the *pro se* motion was verified. Subsequently, counsel appointed to represent Oxford prepared an amended Rule 29.15 motion asserting various claims not asserted by Oxford in his *pro se* motion, including ineffective assistance of trial counsel. Oxford refused to communicate with his counsel and as a result the amended petition was filed without verification. After an evidentiary hearing, the trial court denied both Rule 29.15 motions. Oxford then took a direct appeal of his conviction and sentence and an appeal of the denial of his Rule 29.15 motions to the Missouri Supreme Court. After consolidating the appeals, that court affirmed the trial

---

1. The Honorable Charles R. Wolle, United States District Judge for the Southern District of Iowa, sitting by designation in the Western District of Missouri.

2. The facts of the case are fully set forth in *State v. Oxford*, 791 S.W.2d 396 (Mo.1990) (en banc), *cert. denied*, 498 U.S. 1055, 111 S.Ct. 769, 112 L.Ed.2d 789 (1991).

court in all respects, holding, *inter alia*, that the claims raised in Oxford's amended Rule 29.15 motion were procedurally barred because Oxford had failed to verify the amended motion in accordance with Rule 29.15. *State v. Oxford*, 791 S.W.2d 396, 401 (Mo. 1990) (en banc), *cert. denied*, 498 U.S. 1055, 111 S.Ct. 769, 112 L.Ed.2d 789 (1991).

Following the Missouri Supreme Court's denial of motions for rehearing and to recall the mandate, Oxford filed his § 2254 petition in the District Court. As amended, the petition contained thirty claims of constitutional error. The District Court subsequently stayed further proceedings, giving Oxford an opportunity to file with the Missouri Supreme Court a second motion to recall the mandate and thereby to exhaust several previously unexhausted claims. The Missouri Supreme Court summarily denied Oxford's motion, and the District Court lifted its stay. After thoroughly addressing the procedural history of each of Oxford's habeas claims, the District Court dismissed all but one of them on the ground that they were procedurally barred.[3] *See Oxford v. Delo*, No. 91–0080–CV–W–8 (W.D.Mo. Aug. 10, 1993) (order dismissing counts 1–3, 5, 7, 8, 17, 19, 27–29); *Oxford v. Delo*, No. 91–0080–CV–W–8 (W.D.Mo. Sept. 29, 1993) (order dismissing counts 4, 6, 9–16, 18, 20–26, and 30).

In its two orders, the District Court found that the Missouri Supreme Court had made the following determinations with respect to Oxford's claims: (1) Oxford's claims 2, 3, 5, 8, 17, 19, 20, 27, 28, and 29 were procedurally defaulted because they were raised in the amended Rule 29.15 motion that Oxford had failed to verify; (2) Oxford's claims 1, 4, 6, 7, 9, 10, 11, 12, 13, 14, 15, 18, and 20 were procedurally defaulted because they were raised only in Oxford's motions to the court to recall its mandate; (3) Oxford's claim 26, although properly raised in his *pro se* Rule 29.15 motion, was not raised in his appeal from the denial of that motion and thus also was procedurally defaulted. The District Court then examined each of the Missouri Supreme Court's determinations of procedur-

---

3. Oxford's habeas claims may be summarized as follows:

No. 1—Ineffective assistance of appellate counsel (failure to brief on appeal various points involving denial of constitutional rights)

No. 2—Ineffective assistance of trial counsel (IATC) (failure to produce mitigating evidence regarding mental condition at sentencing)

No. 3—IATC (failure to produce mitigating evidence regarding mental illness at sentencing)

No. 4—IATC (failure to object to jury instructions Nos. 4 and 15)

No. 5—IATC (failure to present evidence of childhood mental and physical health problems to jury)

No. 6—Trial court error in submitting jury instruction No. 18 (regarding aggravating circumstances)

No. 7—Trial court error in submitting jury instruction No. 21 (requiring unanimity for a finding of mitigating circumstances)

No. 8—IATC (failure to secure additional psychiatrist to investigate mental illness and testify at sentencing)

No. 9—IATC (failure to object to jury instructions Nos. 18 and 21)

No. 10—Trial court error in excluding juror

No. 11—IATC (failure to question jurors regarding death penalty)

No. 12—Improper prosecutorial remarks about deterrence

No. 13—Improper prosecutorial remarks about victims' family

No. 14—IATC (failure to object to comment about polygraph exam)

No. 15—Failure of state to give notice of intent to rely upon statutory aggravating circumstances

No. 16—Disproportionate imposition of the death penalty

No. 17—IATC (failure to raise evidence of duress and domination)

No. 18—Trial court error in allowing separate enumeration of prior convictions

No. 19—IATC (failure to raise insanity defense)

No. 20—IATC (failure to prepare opening statement and failure to argue in support of motions for directed verdict)

No. 21—IATC (failure to inquire of jurors whether they believed arrest indicated guilt)

No. 22—IATC (failure to adequately interrogate potential jurors)

No. 23—IATC (failure to adequately examine witness)

No. 24—IATC (failure to adequately cross-examine witness)

No. 25—IATC (failure to adequately cross-examine witness)

No. 26—IATC (failure to object to various exhibits)

No. 27—IATC (failure to introduce testimony of examining psychiatrist at sentencing)

No. 28—IATC (failure to introduce testimony of childhood examining psychiatrist at sentencing)

No. 29—IATC (failure to introduce testimony of prison superintendent at sentencing)

No. 30—IATC (failure to object to admission of edited testimony of childhood examining psychiatrist)

al default and concluded that they rested on independent state law grounds adequate to bar federal habeas review.

The District Court also determined that Oxford's claims 21, 22, 23, 24, 25, 26, and 30 never had been presented to the Missouri Supreme Court in any form, and that the claims would be procedurally barred in the Missouri courts if Oxford were now to present the claims in an attempt to exhaust his state remedies. Accordingly, the District Court determined that all of these claims had been procedurally defaulted under state law.

With respect to all of the claims found to have been procedurally defaulted, the District Court, based on the state court record and the parties' briefs and oral arguments, ruled that Oxford had not established cause and prejudice to excuse his procedural default.[4] All of the procedurally defaulted claims therefore were dismissed by the District Court as procedurally barred.

The only claim found not procedurally barred was Oxford's claim number 16, which alleges that Missouri's death penalty is unconstitutional both facially and as applied. The District Court rejected this claim on the merits and Oxford does not now challenge that decision. Oxford does challenge the District Court's dismissal of his other claims as procedurally barred.

## II.

■ We first address Oxford's argument that failure to verify an amended Rule 29.15 motion does not constitute an independent or adequate state ground sufficient to bar federal review of the claims raised therein. It is well established that federal courts are barred from reviewing claims decided on independent and adequate state law grounds. *Fox Film Corp. v. Muller*, 296 U.S. 207, 210, 56 S.Ct. 183, 184, 80 L.Ed. 158 (1935). In *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 2506–07, 53 L.Ed.2d 594 (1977), the Supreme Court extended this principle to federal review of habeas claims brought by petitioners who are in state custody. *See*

*also Coleman v. Thompson*, 501 U.S. 722, 729–30, 111 S.Ct. 2546, 2553–54, 115 L.Ed.2d 640 (1991). Moreover, the Supreme Court has held that a procedural default under state law may constitute independent and adequate state law grounds precluding federal review. *Harris v. Reed*, 489 U.S. 255, 262, 109 S.Ct. 1038, 1042–43, 103 L.Ed.2d 308 (1989) ("Under *Sykes* ... an adequate and independent finding of procedural default [as a matter of state law] will bar federal habeas review of the federal claim....").

Missouri Supreme Court Rule 29.15 provides that a person convicted of a felony may seek relief from the conviction by filing with the trial court a motion to vacate. A Rule 29.15 movant "shall verify the motion, declaring that he has listed all grounds for relief known to him and acknowledging his understanding that he waives any ground for relief known to him that is not listed in the motion." Mo.R.Crim.P. 29.15(d). In addition, Rule 29.15 requires that "[a]ny amended motion shall be verified by movant." Mo. R.Crim.P. 29.15(f). Because Rule 29.15 is the exclusive procedure for post-conviction relief in Missouri, claims not properly asserted under the rule are procedurally defaulted. *See State v. Dixon*, 854 S.W.2d 521, 524 (Mo.Ct.App.1993); *State v. Robinson*, 832 S.W.2d 941, 945 (Mo.Ct.App.1992). It was Oxford's failure to verify his amended motion in accordance with subsection (f) that led to the procedural default of claims 2, 3, 5, 6, 8, 10, 19, and 20.

■ A claim that is procedurally defaulted under state law, however, is barred from federal review only if the state procedural rule is both (1) firmly established and (2) regularly followed. *Ford v. Georgia*, 498 U.S. 411, 423–24, 111 S.Ct. 850, 857–58, 112 L.Ed.2d 935 (1991); *Grubbs v. Delo*, 948 F.2d 1459, 1462–63 (8th Cir.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 109, 121 L.Ed.2d 67 (1992). Federal review is not barred where a state procedural rule is inconsistently enforced or the state court undertakes a novel application of the rule. *See Grubbs,* 948 F.2d

---

4. As the District Court observed, Oxford makes no claim of actual innocence. Thus, as a matter of law, he cannot satisfy the miscarriage of justice exception to the cause and prejudice require-

ment. *See Schlup v. Delo,* —— U.S. ——, ——, 115 S.Ct. 851, 861, 130 L.Ed.2d 808 (1995); *Washington v. Delo,* 51 F.3d 756, 760–61 (8th Cir.1995).

745

at 1462–63. Thus, whether Oxford's claims are barred turns on whether Missouri Supreme Court Rule 29.15 is firmly established and regularly followed. Oxford contends that it is not.

Although Rule 29.15 did not have a lengthy history of litigation at the time Oxford filed his unverified amended motion, that fact is of little avail to him. The verification requirement of Rule 29.15 is plainly stated in the rule and had been in effect for more than a year when Oxford filed his amended motion. Indeed, Oxford evidently was aware of the verification requirement prior to filing his amended motion because his original *pro se* motion was properly verified. Accordingly, we conclude that the verification requirement of Rule 29.15 was firmly established.

As to the "regularly followed" component of our inquiry, we disagree with Oxford's assertion that the verification requirement of Rule 29.15 has been "in a constant state of flux" since he filed his motion. Appellant's Brief, p. 46. We find that the Missouri courts have consistently enforced the verification requirements of Rule 29.15. *See, e.g., State v. Evans,* 802 S.W.2d 507, 515 (Mo. 1991) (en banc) (declaring unverified post-conviction motion a nullity); *Dixon,* 854 S.W.2d at 524 (holding that post-conviction motions were procedurally deficient due to lack of verification); *Robinson,* 832 S.W.2d at 945 (holding that claims were not preserved for appellate review where post-conviction motion was not properly verified); *State v. Boyd,* 816 S.W.2d 19, 20 (Mo.Ct.App.1991) (to same effect); *State v. Norris,* 813 S.W.2d 379, 382 (Mo.Ct.App.1991) (to same effect); *State v. Leisure,* 810 S.W.2d 560, 576 (Mo.Ct. App.1991) (to same effect); *State v. Norfolk,* 807 S.W.2d 105, 108 (Mo.Ct.App.1990) (appellate court may not review claims raised in unverified amended motion); *McDaniels v. State,* 806 S.W.2d 450, 451 (Mo.Ct.App.1991) (unverified post-conviction motion must be dismissed for lack of jurisdiction); *Taylor v. State,* 800 S.W.2d 808, 810 (Mo.Ct.App.1990) (to same effect); *cf. State v. Clay,* 817 S.W.2d 565, 569 (Mo.Ct.App.1991) (holding that court may rule on an unverified motion if movant establishes that failure to verify is caused by the inattention of counsel); and *Hutchinson v. State,* 821 S.W.2d 916, 917 (Mo.Ct.App. 1992) (to same effect). These and numerous other decisions make it plain that the verification requirement has been regularly followed in cases, like the present one, in which the movant cannot demonstrate that the failure to verify was caused by the inattention of counsel.

Because we find that the verification requirement of Rule 29.15 was firmly established at the time Oxford filed his amended motion and has been regularly followed since its inception, we conclude, as did the District Court, that the Missouri Supreme Court's determination that Oxford's claims 2, 3, 5, 6, 8, 10, 19, and 20 are procedurally defaulted rests upon an adequate and independent state law ground, sufficient to bar the District Court's review of those claims.

### III.

Oxford also argues the District Court erred in determining that his claim of ineffective assistance of direct-appeal counsel (claim 1) is procedurally barred. This claim was raised for the first time in Oxford's second motion to recall the mandate. The District Court determined that the Missouri Supreme Court had dismissed the claim as procedurally defaulted when that court denied Oxford's motion. Oxford contends that the claim is not procedurally barred because the Missouri Supreme Court denied the motion without mentioning procedural grounds. The denial in fact was a one-liner that did not explain the basis for the court's ruling. In these circumstances, we agree with the District Court that the federal habeas court must "look through" the unexplained state court order to the state court's last reasoned decision. *See Ylst v. Nunnemaker,* 501 U.S. 797, 803–04, 111 S.Ct. 2590, 2594–95, 115 L.Ed.2d 706 (1991). This brings us back to the Missouri Supreme Court's order denying Oxford's first motion to recall the mandate, which plainly stated that all the claims asserted in that motion were procedurally defaulted and that any further claims Oxford might attempt to raise later also would be procedurally defaulted. It follows under *Ylst* that the Missouri Supreme Court's denial of Oxford's second motion to recall the mandate

must be read as having been based on procedural grounds.

Because Oxford has not shown cause and prejudice to excuse his procedural default, and because he does not satisfy the miscarriage of justice exception to the cause and prejudice standard, *see supra* note 4, we agree with the District Court that this claim is barred from federal habeas review.

■■■ Moreover, even if the claim were not procedurally barred, we concur with the District Court's conclusion that the claim is meritless. To succeed on an ineffective assistance of appellate counsel claim, Oxford must show (1) that his counsel's performance was deficient and (2) that but for counsel's unprofessional errors, the result of the proceedings would have been different. *Wilson v. Armontrout,* 962 F.2d 817, 819 (8th Cir.) (citing *Strickland v. Washington,* 466 U.S. 668, 687, 694, 104 S.Ct. 2052, 2064–2065, 2068, 80 L.Ed.2d 674 (1984)), *cert. denied,* —— U.S. ——, 113 S.Ct. 383, 121 L.Ed.2d 293 (1992). Without citing specific examples, Oxford alleges that his counsel failed to brief numerous violations of Oxford's constitutional rights on direct appeal. After reviewing the record, however, we agree with the District Court that Oxford's direct-appeal counsel was well within the bounds of his discretion in limiting the number of issues raised in Oxford's direct appeal. We have held that counsel must make "strategic choices ... after thorough investigation of [the] law and facts relevant to plausible options," *Horne v. Trickey,* 895 F.2d 497, 500 (8th Cir.1990) (quoting *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066), and that "[t]he Constitution does not require appellate counsel to raise every nonfrivolous argument on appeal," *Sidebottom v. Delo,* 46 F.3d 744, 759 (8th Cir.1995). We agree with the District Court that direct-appeal counsel's choices as to the issues to be raised were reasonable. Because Oxford has failed to show that his direct-appeal counsel's performance was deficient, our inquiry is at an end. *Horne,* 895 F.2d at 499 ("If ... counsel's conduct was reasonable under the circumstances, we do not need to reach the issue of prejudice.").

## IV.

Oxford argues next that the District Court erred in holding that his claims 4, 9, 12, 13, 15, and 18 were procedurally barred. The District Court's procedural bar determination was predicated on the Missouri Supreme Court's denial of Oxford's second motion to recall the mandate. See our discussion under part III, *supra,* affirming the District Court's finding of procedural bar. Oxford asserts that these claims relate to the imposition of his death sentence and that the Missouri Supreme Court was obligated to review them pursuant to Mo.Rev.Stat. § 565.035. Thus, Oxford argues that the claims could not have been procedurally defaulted even though he had never before raised them. We disagree.

■■■ In this case, the Missouri Supreme Court performed a section 565.035 review of Oxford's sentence and chronicled its conclusions in the published opinion deciding Oxford's consolidated appeal. *See Oxford,* 791 S.W.2d at 402. It was not until well over a year later, however, that Oxford's present claims 4, 9, 12, 13, 15, and 18 were first presented to the Missouri Supreme Court in a motion to recall the mandate. Oxford apparently faults the Missouri Supreme Court for lacking the clairvoyance to divine and then review, *sua sponte,* claims that he had not yet raised. We are satisfied that section 565.035 requires the Missouri Supreme Court neither to demonstrate such clairvoyance nor to scour the record in search of errors that the defendant has failed to raise in his appeal.

Moreover, although Oxford belatedly presented these claims in a motion to recall the mandate, the Missouri Supreme Court, finding them otherwise procedurally defaulted, was not required to review them under Missouri's mandatory review statute. Mo.Rev.Stat. § 565.035 requires the Missouri Supreme Court to review the imposition of all death sentences, taking into consideration, in addition to "any errors enumerated by way of appeal," the following three questions:

(1) Whether the sentence of death was imposed under the influence of passion, prejudice, *or any other arbitrary factor;* and

(2) whether the evidence supports the ... finding of a statutory aggravating circumstance ...;

(3) whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases....

Mo.Rev.Stat. § 565.035.3 (1995) (emphasis added). Oxford would have us hold that the errors alleged in his claims are "arbitrary factors" subject to mandatory review under the first of the above inquiries.

■ Oxford's contention is untenable. The Missouri Supreme Court has not given precise content to the "arbitrary factor" language, so we must read the statutory language as we believe that court would read it. *See Lenhardt v. Zoeller*, 55 F.3d 377, 379 (8th Cir.1995). Based on the language and structure of the statute, the phrase "arbitrary factor" cannot reasonably be read as embracing all claims of error or even all claims of constitutional error. Under the rule of *ejusdem generis*, a general term in a statute that follows an enumeration of specific things is not to be construed broadly but is to be held to apply to other things of the same kind or class as those specifically mentioned. *See Norfolk & W. Ry. Co. v. American Train Dispatchers Ass'n*, 499 U.S. 117, 129, 111 S.Ct. 1156, 1163–64, 113 L.Ed.2d 95 (1991); Black's Law Dictionary 517 (6th ed. 1990). Here, the catch-all phrase "or any other arbitrary factor," follows an enumeration of two specific factors—passion and prejudice. Accordingly, we read the word "arbitrary" narrowly to describe rogue factors that, like passion and prejudice, have no proper place in a jury's deliberations when it imposes a sentence of death.

Here, Oxford does not claim that he was sentenced to death capriciously or impulsively, but instead alleges an assortment of constitutional errors that bear no resemblance to the concerns adumbrated in section 565.035.3(1). Accordingly, we conclude that the Missouri Supreme Court was not obligated to review the claims here at issue, and the District Court was correct in determining that these claims were procedurally defaulted under state law.

## V.

■ Despite his procedural default, Oxford nevertheless is entitled to federal habeas review of his defaulted claims if he can show (1) cause for the default and (2) prejudice as a result of the alleged violation of federal law. *Coleman*, 501 U.S. at 749–50, 111 S.Ct. at 2564–65. Oxford makes only two cause arguments. First, with respect to the claims defaulted under Rule 29.15, Oxford argues that he was mentally unable to comprehend the rule and its strict procedural requirements. In light of the procedural history of this case we find Oxford's contention to be utterly without merit. Oxford evidently possessed mental comprehension sufficient to permit him initially to file an eleven-page *pro se* Rule 29.15 motion enumerating a variety of claims, and in so doing to comply with the Rule's verification requirement. There is nothing in the record to suggest that Oxford lacked the mental capacity to verify his amended motion in the same manner that he verified his *pro se* motion.

Second, Oxford asserts that he has cause for his procedural default based on the ineffective assistance of his trial and Rule 29.15 counsel. With respect to trial counsel, we reject this argument because we fail to see any causal connection between trial counsel's performance and Oxford's failure to verify his amended Rule 29.15 motion. Further, this Court has held that the performance of trial counsel is irrelevant to the cause inquiry where the petitioner fails to raise the ineffective assistance of trial counsel claim in state court proceedings. *Maynard v. Lockhart*, 981 F.2d 981, 984 (8th Cir.1992); *Harris v. Lockhart*, 948 F.2d 450, 452 (8th Cir.1991). Here, Oxford raised the ineffective assistance of trial counsel claim only in his unverified amended Rule 29.15 motion, which under Missouri law is a nullity. *See Boyd*, 816 S.W.2d at 20. Oxford cannot resurrect this procedurally defaulted claim by cloaking it in the garb of a cause argument.

We also reject Oxford's argument that the ineffective assistance of his counsel during the Rule 29.15 proceedings affords him cause for his procedural default. Oxford has made no attempt to show how the alleged inadequacy of his counsel caused Oxford to fail to

verify his amended Rule 29.15 motion. Rather, Oxford admits that the lack of verification resulted from his failure to communicate with his counsel, who drafted the amended motion. *See* Memorandum in Support of the Petitioner's Motion for Reconsideration of the Court's Order Denying an Evidentiary Hearing at 8, *Oxford v. Delo,* No. CV91–0080–CV–W–8 (W.D.Mo. Sept. 1, 1993).

■ In any event, Oxford had no constitutional right to the effective assistance of counsel in his post-conviction proceedings under Rule 29.15. *See Coleman,* 501 U.S. at 752, 111 S.Ct. at 2566. Oxford's argument that his Rule 29.15 proceedings were so intimately bound up with his direct appeal that he had a constitutional right to the effective assistance of counsel during those proceedings has been squarely rejected by this Circuit. *See Nolan v. Armontrout,* 973 F.2d 615, 616–17 (8th Cir.1992). There is no right to the effective assistance of Rule 29.15 counsel even when the same individual acts as Rule 29.15 counsel and direct-appeal counsel. *See Lowe–Bey v. Groose,* 28 F.3d 816, 820 (8th Cir.), *cert. denied,* — U.S. ——, 115 S.Ct. 674, 130 L.Ed.2d 606 (1994).

■ In *Lowe–Bey,* we discussed at length Missouri's hybrid appeals process and the distinction between Rule 29.15 counsel and direct-appeal counsel. We concluded that

> even if [petitioner's] direct-appeal counsel had handled a hybrid [Rule 29.15] appeal, [petitioner] would only have been entitled to effective assistance of counsel on that portion of the hybrid appeal that was devoted to direct-appeal issues because he has no right to effective assistance of counsel on that portion of the hybrid appeal devoted to the appeal of his Rule 29.15 claims.

*Id.* (citing *Coleman,* 501 U.S. at 752–55, 111 S.Ct. at 2566–68). Because Oxford had no right to counsel during his Rule 29.15 proceedings, his claim of ineffective assistance of counsel during those proceedings cannot constitute cause for his procedural default. *See Coleman,* 501 U.S. at 757, 111 S.Ct. at 2568–69; *Pollard v. Delo,* 28 F.3d 887, 888 (8th Cir.1994).

In short, we affirm the District Court's determination that as a matter of law Oxford cannot show cause to excuse his procedural defaults. Absent a showing of cause we need not reach the issue of prejudice. *Lowe–Bey,* 28 F.3d at 820.

## VI.

■ Finally, Oxford contends that the District Court erred in refusing to grant him an evidentiary hearing at which to show cause and prejudice for the default of both the claims raised in his unverified Rule 29.15 motion and his claim of ineffective assistance of direct-appeal counsel. This argument is moot as to the latter claim, since we already have affirmed the District Court's ruling that this claim lacks merit even if it is not procedurally barred. See part III of this opinion, *supra.* As to the remaining claims, the Supreme Court has held that "[t]he petitioner's opportunity to meet the burden of cause and prejudice will not include an evidentiary hearing if the district court determines as a matter of law that petitioner cannot satisfy the [cause and prejudice] standard." *McCleskey v. Zant,* 499 U.S. 467, 494, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991); *see also Hoggard v. Purkett,* 29 F.3d 469, 472 (8th Cir.1994). Here, the District Court determined as a matter of law that Oxford was unable to satisfy the cause-and-prejudice standard. Because we concur in that determination, we conclude that the District Court did not abuse its discretion by denying Oxford's request for an evidentiary hearing. *See Shaw v. United States,* 24 F.3d 1040, 1043 (8th Cir.1994) (stating standard of review).

## VII.

We have considered all of Oxford's arguments and find them meritless. The judgment of the District Court is affirmed.

HEANEY, Senior Circuit Judge, dissenting.

In my view, the district court erred in denying Oxford the opportunity to assert his claims with respect to the ineffectiveness of his counsel at the penalty phase of his trial.

Essentially these claims are embodied in claim numbers 2, 3, 5, and 8 as set forth in footnote 3 of the majority opinion. I would remand this case to the district court with directions to remand to the state court to rehear the penalty phase of this case and permit Oxford's current counsel to introduce any mitigating evidence he feels appropriate. Accordingly, I dissent.

At trial Oxford's counsel introduced evidence of Oxford's troubled childhood and his mental and physical history. At the penalty phase, however, he offered only one witness, Oxford's wife, who testified very briefly about Oxford's good relationship with their children and about episodes in which Oxford behaved strangely. Counsel did not call to the stand any of the psychiatrists who had examined or treated Oxford. In the penalty phase of a trial, "the jury is entitled to receive as much information as possible in order to make an informed decision as to punishment." *State v. Leisure,* 749 S.W.2d 366, 379 (Mo.1988) (citations omitted), *cert. denied,* — U.S. —, 113 S.Ct. 343, 121 L.Ed.2d 259 (1992). The concept of individualized sentencing in capital cases requires that the sentencer possess "the fullest information possible concerning the defendant's life and characteristics" as well as the circumstances of the particular offense. *Lockett v. Ohio,* 438 U.S. 586, 602–04, 98 S.Ct. 2954, 2963–65, 57 L.Ed.2d 973 (1978) (internal quotations and citations omitted).

As was its right, the prosecution offered very graphic and powerful testimony from the victims and relatives of victims of Oxford's previous crimes. The prosecution presented to the jury the worst of Oxford's behavior. It was incumbent upon defense counsel to focus on those aspects of Oxford's background and mental impairments which could be offered in mitigation. Even though some, though not all, of such evidence would duplicate testimony given during the guilt phase of the trial, counsel had a responsibility to offer it in the penalty phase, where the focus is on determining whether life or death is the appropriate sentence for this particular defendant.

Oxford's mother attests that Oxford was an unwanted child. She attempted to self-abort the pregnancy several times. After Oxford's birth, she had no maternal feelings of love or affection and considered him an unwanted responsibility, yet she also refused to allow him to be adopted by others who offered to raise him. Oxford's father was distant and unaffectionate. The only adult relative who gave positive attention to Oxford was an uncle, who committed suicide when Oxford was about seven years old.

At age seventeen months Oxford was hospitalized with pneumonia and received three blood transfusions to his head. After he came home from the hospital he was nervous and irritable, he could not sit still, and his body often twitched, even while he was sleeping. From his earliest days in kindergarten Oxford was disruptive, and no discipline from parents or teachers was effective. By second grade, medication was prescribed, but it made his condition worse. A change in medication caused an opposite reaction, and Oxford became a "zombie" who cried often and would sit and do nothing for long periods of time. His mother then began to alternate having him on and off the drug. He also had two concussions before the age of ten. Oxford's paternal grandmother was in and out of mental institutions for most of her life, and she was treated with electric shock therapy on at least one occasion.

Around age ten Oxford began sniffing glue. By his teenage years he was taking other drugs such as speed and Valium. Around age thirteen Oxford began therapy with a psychiatrist. He was in therapy for about two years and was placed in a facility for about one and a half years while still undergoing therapy with the psychiatrist. Oxford also was placed in two other facilities during his teenage years. There was never any lasting change in his family circumstances or behavior. A psychiatrist who examined Oxford in 1987 and 1988 and testified at the guilt phase of the trial offered the opinion that Oxford was mentally ill, probably suffering from schizophrenia. The psychiatrist observed some of the same symptoms reported by Oxford's family members throughout his childhood and adulthood and by his childhood therapist.

I recognize that Oxford does not make a claim of actual innocence to bring him technically within the miscarriage of justice standard. In my view, however, his claim that presentation to the jury of all the mitigating evidence would have provided a basis for avoiding the death penalty should fall into the same category.